IN THE BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **In re USA Pools, Inc.,** | Case No.: 22-13411-PDR |
| **Debtor.** | Chapter 7 |

**CREDITORS ED AND ROXANA NADER'S
(I) RESPONSE TO DEBTOR'S MOTION FOR PROTECTIVE ORDER; (II) CROSS-MOTION TO COMPEL; AND (III) REQUEST FOR ATTORNEY'S FEES AND COSTS**

Creditors Ed and Roxana Nader (the "**Creditors**") hereby file this response to Debtor USA Pools Inc.'s (the "**Debtor**") *Motion for Protective Order for Non-Debtors Leslie Schiff, Stealth Tactical, Inc. and Schiff Process Service, Inc.* (the "**Motion**") [ECF No. 11] and cross-moves to compel cooperation with the Creditors' discovery requests.

**Preliminary Statement**

Mr. and Mrs. Ed and Roxana Nader have been attempting for over four years to collect on a judgment obtained against the Debtor in May 2018. Despite multiple judgments and orders in state court, the Debtor has refused to pay, either claiming it was insolvent or flatly ignoring the state court's orders. The Debtor filed the instant chapter 7 case immediately prior to a hearing set by the state court where the Creditors anticipated that the state court was going to take more severe action against the Debtor and its principal Leslie Schiff. The hearing did not proceed due to the automatic stay.

Despite the Debtor's claims to the contrary, the Debtor clearly had funds to satisfy the Creditors' judgment in the last four years. To wit, the Creditors obtained discovery in the state court proceedings showing deposits in excess of $200,000 into the Debtor's bank account in 2020

that were subsequently transferred out of the account to Mr. Schiff, his relatives, Mr. Schiff's other companies, and Mr. Schiff's personal banks and credit cards. As a result, the Creditors submit that there are multiple sources of recovery that the bankruptcy estate should pursue to recoup funds fraudulently transferred out of the Debtor's account to third parties.

In order to facilitate the trustee in its goal of discovering the full extent of the Debtor's estate, the Creditors sought the Rule 2004 examination of Mr. Schiff as principal of the Debtor and in his personal capacity, as well as in his capacity as principal of his other companies (the "**Schiff Subpoena**") [ECF No. 9]. The Creditors also subpoenaed Suntrust Bank to obtain information relating to the Debtor's apparent satisfaction of the Schiff's second mortgage in March 2020 (the "**Suntrust Bank Subpoena**," and together the "**Subpoenas**") [ECF No. 10]. Copies of the subpoenas are attached hereto as **Composite Exhibit A**. The Creditors contend that the responses to the Rule 2004 requests will shed light on a large amount of funds that the Debtor fraudulently transferred out of its estate in the last four years and that should be recouped by the estate through these bankruptcy proceedings. Therefore, the Debtor's attempt to stop this discovery should be denied, Mr. Schiff should be compelled to cooperate with the Creditors' discovery requests, and the Creditors should be awarded attorney's fees.

## Background

1. The Debtor is owned and operated by Mr. Leslie Schiff as a pool construction, improvement, and maintenance company. To the best of the Creditors knowledge, Mr. Schiff is the only shareholder of the Debtor, and the Debtor does not have any other employees.

2. Mr. Schiff operates USA Pools, Inc. out of his home located at 2000 NW 105 Terrace, Pembroke Pines, Florida 33026. *See* Bankruptcy Petition p. 1 ECF No. 1 (question 4, listing this address as Debtor's address). He is also the principal of two other companies, Stealth

Tactical, Inc., a firearms sale and repair company, and Schiff Process Service, Inc., a process serving company (together, the "**Related Companies**"), which he likewise operates out of his home.[1]

3.  Mr. and Mrs. Nader hired the Debtor in 2014 to construct a pool on their residence. The Debtor never completed the project according to the specifications of the contract. As a result, the Creditors filed a complaint with the Better Business Bureau, which resulted in an arbitration award issued on May 28, 2014 requiring the Debtor to complete construction of the pool as dictated in the contract. Mr. Schiff did not comply with the order, and the Creditors were compelled to sue him in Broward Circuit Court on June 30, 2014, case number COCE14012255. That case was transferred the following year to a different judge, case number CACE15009639.

4.  On December 13, 2016, the state court entered an order confirming the arbitration award, ordering the Debtor to comply with the terms of the arbitration award and complete construction of the pool. The Debtor continued to refuse to comply with the state court's order, requiring the Creditors to continue litigating against it in the state court action. To compel compliance with the original order, the state court entered three additional orders. First, the state court entered two orders for attorney's fees and costs, one on April 12, 2017 for an unspecified amount, and one on May 18, 2018 in the amount of $18,665.00 with interest. Second, on

---

[1] *See* SUNBIZ.ORG, listing Mr. Schiff's address as the Related Companies' principal addresses, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=STEALTHTACTICAL%20P050001034311&aggregateId=domp-p05000103431-cec92b07-2d5e-47af-96e5-a50ce9bd5279&searchTerm=stealth%20tactical&listNameOrder=STEALTHTACTICAL%20P050001034311; https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=SCHIFFPROCESSSERVICE%20M791090&aggregateId=domp-m79109-2a8bacc8-b21f-460c-a734-baf207a39da7&searchTerm=schiff%20process%20service&listNameOrder=SCHIFFPROCESSSERVICE%20M791090 (last checked May 23, 2022).

December 4, 2021, the state court entered an order awarding the Creditors sanctions from the Debtor in an amount of $150 a day until the Debtor complied with the state court's orders. Copies of all four state court orders are attached hereto as **Composite Exhibit B**.

5. After the Debtor continued to refuse to comply with any of the state court orders, the state court set a hearing for May 4, 2022, wherein the Creditors anticipated the state court to enter further sanctions against the Debtor. As a result of the Debtor's bankruptcy filing on April 29, 2022 and the imposition of the automatic stay, the state court could not proceed and closed the case on May 5, 2022.

6. The state court's attorney's fees award with interest and sanctions the Debtor has accrued to date as a result of failing to comply with the state court's orders amounts to approximately $47,876. The Creditors estimate additional attorney's fees incurred in the state court litigation at approximately $32,000. Additionally, the Creditors have procured estimates to complete construction of the pool for approximately $15,000. As a result, the Creditors intend to file a proof of claim for approximately $95,000–$100,000 in this case.

### Results of Discovery in the State Court Litigation

7. Through the course of the state court litigation, the Creditors obtained production of bank account statements and copies of checks issued from the Debtor's Wells Fargo bank account number 2000135042643. Most pertinent here is the bank account activity from February 2020 to May 2020; copies of the bank account statements for this time period are attached hereto as **Exhibit C** and copies of the checks issued during this time period are attached hereto as **Exhibit D**.

8. Multiple transactions recorded in the bank account statements indicate that Mr. Schiff utilized the Debtor's funds for personal use. For example, there were two large deposits

into the Debtor's bank account on February 3, 2020, and April 8, 2020, totaling $211,500 for payment of the completion of a pool construction at the Avant Apartment Complex in Pembroke Pines. *See* Ex. C pp. 2, 8. However, by the end of May 2020, the Debtor's bank account had been reduced to a balance of $10,940.96. *See id.* p. 12.

9. The withdrawals and checks issued from the account between March 2020 to May 2020 indicate that Mr. Schiff depleted the Debtor's assets by executing wire transfers to other bank accounts and issuing checks in large sums to himself, his relatives, and his other businesses.

10. In particular, on March 5, 2020, Mr. Schiff wired $39,003.63 from the Debtor's bank account to an account at Suntrust Bank. *See* Ex. C p. 5. Suntrust holds a publicly recorded second mortgage for $40,000 in the name of Leslie and Margaret Schiff on the property located at 2000 NW 105th Terrace, Pembroke Pines, Florida 33026. A copy of the Suntrust Mortgage is attached hereto as **Exhibit E**.

11. Additionally, Mr. Schiff issued the following checks to himself and relatives between February 2020 to May 2020:

1) 2/28/20:    to Leslie Schiff for $10,000
2) 2/28/20:    to Peggy Schiff or Margaret Schiff for $5,000
3) 3/2/20:     to Leslie Schiff for $5,000
4) 3/4/20:     to Leslie Schiff for $5,000
5) 3/5/20:     to Leslie Schiff for $15,000
6) 3/6/20:     to Leslie Schiff for $12,500
7) 3/11/20:    to Leslie Schiff for $5,500
8) 4/9/20:     to Leslie Schiff for $5,000
9) 4/10/20:    to Peggy Schiff for $2,000

    10) 4/13/20:        to Leslie Schiff for $1,500

    11) 4/27/20:        to Leslie Schiff for $2,500

    12) 5/6/20:         to Leslie Schiff for $1,000

    13) 5/6/20:         to Andrew Schiff for $2,000

    14) 5/6/20:         to Andrew Schiff for $3,800

*See* Ex. D pp. 1, 2, 4, 5, 7, 8, 9, 11, 12, 14, 18, 20, 21, 22.

    12.    Likewise, the Debtor's bank account statements from February 2020 to May 2020 show transfers from the Debtor's bank account to a Way2Save savings account under Leslie Schiff's name (*see* Ex. C pp. 5 (3/6), 8 (4/9), 12 (5/5, 5/15)), as well as multiple payments to credit cards under Leslie Schiff's name (*see id.* pp. 5 (3/2, 3/3, 3/4, 3/9), 8 (4/9, 4/16, 4/24, 4/27), 12 (5/1, 5/4, 5/5, 5/7, 5/13, 5/14, 5/15, 5/26, 5/29). Finally, the Debtor's bank account statements also show transfers from the Debtor to Stealth Tactical, Inc. (*see id.* pp. 8 (4/9), 12 (5/20, 5/28)) and Schiff Process Service, Inc. (*see id.* pp. 8 (4/17)), Mr. Schiff's other businesses.

    13.    Due to the extensive record of transfers from the Debtor to multiple third parties with no apparent business-relationship to the Debtor, the Creditors undertook to seek discovery from the these entities in an attempt to determine the extent to which the Debtor may have transferred its funds to third parties for inadequate consideration. To that end, the Creditors filed and served the Schiff Subpoena and the Suntrust Bank Subpoena.

## Argument

    A.    **The Creditors' Discovery Requests are Well within the Scope of Rule 2004 and Seek to Discover the Extent of the Debtor's Estate.**

    14.    Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") expressly contemplates examination of entities other than the debtor where such

examination relates "to the acts, conduct, or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." *See* Bankruptcy Rule 2004(b). Rule 2004-1 of the Local Rules further confirms that Rule 2004 may be utilized to take examinations of third parties. *See* Local Rule 2004-1(D) (requiring subpoena to compel attendance or production of documents from witnesses other than the debtor).

15. Bankruptcy courts have widely acknowledged that Rule 2004 grants authority for creditors to engage in a "fishing expedition" to enable the trustee to discover the nature and extent of the bankruptcy estate. *See, e.g.*, *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (noting purpose of Rule 2004 is to discover assets, examine transactions, and determine whether wrongdoing has occurred). This Court has recognized the broad scope of Rule 2004 for creditors to conduct a "general fishing expedition" into a debtor's affairs, "so long as the information sought relates to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." *In re MMH Automotive Group, LLC*, 346 B.R. 229, 233 (Bankr. S.D. Fla. 2006) (Isicoff, J.) (internal citations omitted).

16. For this reason, the Court in *In re MMH Automotive Group* overruled a motion for protective order filed a by a third party, noting that creditors of the estate have broad ability to seek discovery from targets of potential fraudulent transfer claims. *See id.* In a similar ruling in *In re Pan Am. Hosp. Corp*, 2005 WL 2445907, * 2–5 (Bankr. S.D. Fla. Feb. 25, 2005) (Cristol, J.), this Court allowed the SEIU to conduct Rule 2004 examinations of members of the debtor's board of directors and CEO on the grounds that Rule 2004 examinations are "extremely broad, and are allowed for the purpose of discovering assets and unearthing frauds." *Id.* * 2 (internal citations omitted).

17.     Here, the Creditors propounded Rule 2004 discovery targeted at discovering the extent of the Debtor's estate, including discovery requests issued to non-Debtor parties that may serve as sources for recovery on fraudulent transfer grounds. Due to the extensive record of unexplained transfers from the Debtor's account to Mr. Schiff's personal accounts and relatives, the Creditors sought discovery related to Mr. Schiff's personal bank accounts and transfers to his relatives. Likewise, the Creditors sought discovery related to the Schiff's second mortgage from Suntrust Bank, which appears to have been paid off by the Debtor in March 2020 with no apparent consideration received by the Debtor in return. The Related Companies are likewise potential targets of fraudulent transfer claims because there are records of transfers from the Debtor to these companies that are entirely unexplained in light of the very different nature of the Related Companies' operations from those of the Debtor.

18.     The Creditors' intention in seeking the discovery is to determine the extent of the Debtor's estate and against which non-Debtor entities it may be appropriate to initiate adversary proceedings. Just as in *In re MMH Automotive Group* this Court allowed Rule 2004 examinations of non-Debtors to proceed for these purposes, the Court should allow the Creditors' discovery requests in this case to proceed as well and compel Mr. Schiff to cooperate in the Creditors' discovery requests.

   B.     **The "Pending Proceeding Rule" is Inapposite.**

19.     Courts have recognized that where "a contested matter or adversary proceeding is pending, Rule 2004 should not be used, but rather the various discovery provisions of the Federal Rules of Civil Procedure should apply." *In re Pan Am. Hosp. Corp.*, 2005 WL 2445907, * 3. Application of this rule is only appropriate, however, where there is in fact a contested matter that is presently pending. *See id.* Indeed, this Court in *In re Pan Am. Hosp.* declined to apply this rule

to stay Rule 2004 examinations where the only other contested matter in the case had been abated. *See id.* (noting that the SEIU's motion to appoint a trustee had been abated and there was therefore no "pending proceeding" before the court, and that therefore Rule 2004 examinations of the debtor's management were appropriate).

20. Here, although the Debtor's anticipation of future adversary proceedings against Mr. Schiff, the Related Companies, and Mr. Schiff's banks is well-founded based on the discovery obtained in state court, those proceedings are not yet pending. Similarly, any additional discovery the Creditors could have sought in the state court proceedings has been stayed as a result of the automatic stay. At this point in the bankruptcy proceedings, the only way for the Creditors to obtain discovery from non-Debtors that will likely become targets of fraudulent transfer claims is through Rule 2004 examinations. Therefore, the Court should allow the Creditors' discovery requests to proceed and compel Mr. Schiff to cooperate in the Creditors' discovery requests.

C. **The Debtor Does Not Have Standing to Stop Discovery from Suntrust Bank.**

21. Under the Bankruptcy Rules, "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection" objecting to the production. Fed. R. Civ. P. 45(d)(2)(B) (incorporated in the Bankruptcy Rules under Rule 9016). Courts have regularly held that "a defendant or a putative defendant lacks standing to object to a subpoena issued to a nonparty witness." *United States v. Miller*, 425 U.S. 435, 444 (1976); *In re Mitchell*, 2019 WL 1054715, * 2 (Bankr. D. Idaho March 5, 2019) (holding debtor did not have standing to object to subpoena issued to third party seeking medical records). Courts have specifically applied this rule to deny motions to quash subpoenas issued to financial institutions where the movant—the debtor—was not the subject of the subpoena and had not proffered any grounds for protecting the information

on the basis of privilege. *See, e.g.*, *In re Rhodes Cos., LLC*, 475 B.R. 733, 736, 738 – 41 (D. Nev. 2012) (affirming denial of debtor's motion to quash subpoena to financial institutions for lack of standing based on analysis of Fed. R. Civ. P. 45).

22. Here, the Debtor lacks standing to object to the Suntrust Bank Subpoena because the Debtor is not the subject of the subpoena. The Debtor has likewise not proffered any grounds for protecting the information related to the second mortgage sought in the subpoena on privilege grounds. As a consequence, the Debtor's motion as to the Suntrust Bank Subpoena should be denied.

    **D.**    **An Award of Attorney's Fees Incurred Compelling the Discovery is Appropriate.**

23. A court may award attorney's fees and expenses associated with compelling discovery under the Bankruptcy Rules. *See* Bankruptcy Rule 7037 (applying Fed. R. Civ. P. Rule 37 requiring imposition of attorney's fees and costs if motion to compel is granted). This court has utilized Bankruptcy Rule 7037's authority to impose attorney's fees for a Debtor's failure to comply with a Rule 2004 examination request. *See In re Washington*, 235 B.R. 126, 127 – 29 (Bankr. S.D. Fla. 1998) (imposing an award of attorney's fees against debtor that failed to appear at a Rule 2004 examination).

24. Although these bankruptcy proceedings are at an early stage and a request for attorney's fees at this point would usually be premature, in truth the litigation between the Debtor and the Creditors is over six years old. The state court has already awarded the Creditors attorney's fees and costs twice in the state court litigation for the Debtor's conduct in that case, as well as an imposition of sanctions that continue to accrue at a rate of $150 a day. The Creditors submit that it is facially apparent that the present chapter 7 filing is a continuation of the Debtor's and Mr.

Schiff's dilatory litigation tactics that are intended to delay the Creditors from recovering on the state court judgment awarded to them over four years ago. By all indications, this bankruptcy proceeding is a clear attempt to hinder the Creditors by staying the state court litigation.

25.     The Creditors were required to engage new bankruptcy counsel and incur additional fees and costs to continue pursuing the Debtor in a dubious bankruptcy filing. The Debtor's filing of the Motion was yet another example in a long list of the Debtor's conduct attempting to deny the Creditors a recovery. The Motion was clearly unwarranted based on the information revealed in the state court discovery, and the Creditors incurred attorney's fees and costs yet again in propounding discovery and responding to the Motion while simultaneously moving to compel responses to the discovery.

26.     The Court should not allow the Debtor to continue to implement its litigation tactics unchecked. An imposition of attorney's fees and costs associated with responding to the Motion and moving to compel the discovery sought in the Subpoenas would serve to stop any further dilatory tactics on the part of the Debtor. The Court should therefore award the Creditors their attorney's fees and costs.

## Conclusion

27.     For the foregoing reasons, the Creditors respectfully request that the Court deny the relief sought in the Motion, compel Mr. Schiff to cooperate with the Creditors' discovery requests, and award attorney's fees and costs to the Creditors for the fees and costs associated with compelling the discovery.

## Certification of Attempt to Confer

28.     In compliance with the conferral requirements for motions to compel under Rule 37(a) of the Federal Rules of Civil Procedure incorporated in the Bankruptcy Rules through

Bankruptcy Rule 7037, the undersigned Creditors' counsel certifies that it has attempted to confer with the Debtor's counsel prior to filing this response and motion. Due to time constraints, Debtor's counsel could not be reached by telephone prior to filing this response and motion. Creditors' counsel will continue to attempt to confer until the hearing on the Motion, and if an agreement is reached, will withdraw the motion to compel and request for attorney's fees.

Dated this 23rd day of May 2022.

    Respectfully submitted,

    By: /s/ Robert A. Stok
    **STOK KON + BRAVERMAN**
    1 East Broward Blvd, Suite 915
    Fort Lauderdale, FL 33301
    Tel.: (954) 237-1777
    Robert A. Stok, Esq. (No. 85705)
    rstok@stoklaw.com
    Theodore (Tuvia) Sandler, Esq. (No. 1015927)
    tsandler@stoklaw.com

    *Counsel to Creditors Ed and Roxana Nader*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 23, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court via CM/ECF system and was served via electronic transmission to the parties who are currently on the list to receive e-mail notice/service for this case.

By: /s/ Robert A. Stok
**STOK KON + BRAVERMAN**
1 East Broward Blvd, Suite 915
Fort Lauderdale, FL 33301
Tel.: (954) 237-1777
Robert A. Stok, Esq. (No. 85705)
rstok@stoklaw.com
Theodore (Tuvia) Sandler, Esq. (No. 1015927)
tsandler@stoklaw.com

*Counsel to Creditors Ed and Roxana Nader*